Michael J. Nader, SBN 200425
michael.nader@ogletree.com
Alexandra M. Asterlin, SBN 221286
alexandra.asterlin@ogletree.com
Kyle A. Wende, SBN 287728
kyle.wende@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
500 Capitol Mall, Suite 2500
Sacramento, California 95814
Telephone: (916) 840-3150
Facsimile: (916) 840-3159

Attorneys for Defendant
CCFI COMPANIES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAHOGANY LOVETTE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CCFI COMPANIES, LLC, dba CHECKSMART FINANCIAL LLC., a corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. ___________________<br><br>**DEFENDANT CCFI COMPANIES, LLC'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT**<br><br>[Filed concurrently with Civil Case Cover Sheet; Declarations of Ariel Kumpinsky, Bridgette Roman, Donna Desilets and Kyle A. Wende; Corporate Disclosure Statement; and Certification of Conflicts and Interested Entities or Persons]<br><br>Action Filed: June 14, 2023<br>Trial Date: TBD |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF MAHOGANY LOVETTE, AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant CCFI COMPANIES, LLC hereby removes to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. 23CV036028 in Alameda County Superior Court, State of California. Removal is proper on the following grounds:

## I. TIMELINESS OF REMOVAL

1. Plaintiff Mahogany Lovette ("Plaintiff") filed a putative Class Action Complaint against Defendant CCFI COMPANIES, LLC (hereinafter "Defendant" or "CCFI") in the California Superior Court for the County of Alameda, Case No. 23CV036028, on June 14, 2023.

2. On June 27, 2023, Defendant received service of the Summons and Complaint through its registered agents for service of process. (Declaration of Bridgette Roman filed in support of this Notice ("Roman Decl."), ¶ 5.) These documents were the initial pleadings received by Defendant setting forth of the claims upon which this action is based. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings and orders served on Defendant in the State Court Action are attached to this Notice of Removal as **Exhibit A** to the Roman Declaration. *Id.*[1]

3. The time to remove under 28 U.S.C. § 1446(b) does not begin to run until receipt by the defendants, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

4. The Complaint does not provide readily ascertainable grounds for removal. CCFI has not received any other pleadings, motions, orders, or other papers from Plaintiff, from which removability could be ascertained. (Roman Decl. ¶ 5; Wende Decl. ¶ 4). As such, this Notice of Removal is timely filed.

## II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

5. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendant, pursuant to the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d).

6. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382,

[1] CCFI filed its answer in the state-court action on July 26, 2023. (Declaration of Kyle A. Wende ("Wende Decl.") ¶ 3, Exhibit A).

California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B).

7. Plaintiff seeks to represent a class of individuals comprising Defendant's non-exempt employees in California going back four (4) years. (Compl., ¶ 12.)

8. In the Complaint, Plaintiff alleges nine causes of action against Defendant: (1) Violation of Cal. Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of Cal. Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of Cal. Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of Cal. Labor Code §§ 1194, 1197 and 1197.1 (Unpaid Minimum Wages); (5) Violation of Cal. Labor Code §§ 201, 202 and 203 (Final Wages Not Timely Paid); (6) Violation of Cal. Labor Code §§ 204 and 210 (Wages Not Timely Paid During Employment); (7) Violation of Cal. Labor Code § 226(a) (Failure to Provide Accurate Wage Statements); (8) Violation of Cal. Labor Code §§ 2800 and 2802 (Failure to Reimburse Necessary Business Expenses); and (9) Violation of Cal. Business & Professions Code § 17200, *et seq*. (Compl., p. 1.)

9. Among other things, Plaintiff alleges putative class members are entitled to meal and rest period premiums, statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees. (Compl., ¶¶ 61, 70, 81, 87, 93, and Prayer for Relief section.)

10. Removal of a class action under CAFA is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

11. Defendant denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class. However, solely for purposes of the jurisdictional requirements for removal, the allegations in Plaintiff's Complaint and a thorough analysis of Defendant's data demonstrates there is a putative class of more than 100 members and the alleged claims place in controversy are, in the aggregate, an amount substantially exceeding five million dollars ($5,000,000). *See* 28 U.S.C. § 1332(d)(6).

**A. The Proposed Class Consists of More Than 100 Members**

12. Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the putative class contains at least 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

13. Plaintiff's proposed class consists of "all current and former non-exempt employees of the Defendant within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the certified class action is provided to the class[.]" (Compl., ¶ 12.) Based on that definition and a review of reports from Defendant's business records, the putative class includes at least 2,731 people. (Declaration of Ariel Kumpinsky ("Kumpinsky Decl."), ¶ 7.)

14. Although Defendant denies class treatment is appropriate, Plaintiff's proposed class, as pled and if certified, would greatly exceed 100 members.

**B. Diversity of the Parties Exists**

15. Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A). That is, the citizenship of at least one class member is diverse from the citizenship of at least one defendant. *Id.*

16. A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is *prima facie* evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff has alleged she is a resident of California. (Compl., ¶ 6.) These allegations are *prima facie* evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in state court Complaint create rebuttable presumption of domicile). Additionally, Plaintiff's personnel and wage records indicate she most recently lived and worked in California. (Declaration of Donna Desilets, ¶ 5.) Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. *See Ayala*, 2016 WL 6561284 at *4.

///

17. A limited liability company ("LLC") is a form of business that resembles both partnerships and corporations. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). "Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purpose of diversity jurisdiction." *Id*. The Ninth Circuit follows the general rule that "an LLC is a citizen of every state of which its owners/members are citizens." *Id*.

18. Defendant CCFI Companies, LLC is a limited liability company organized under the laws of the State of Delaware. (Roman Decl., ¶ 3.) The sole member of Defendant is Checksmart Financial Company, a corporation organized under the laws of the State of Delaware. (*Id.*, ¶ 4.)

19. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

20. Checksmart Financial Company has its principal place of business at its headquarters in Franklin County, Ohio. That is where its officers and directors direct, control and coordinate corporate activities. (Roman Decl., ¶ 4.)

21. Based on the above, for purposes of diversity jurisdiction, Defendant CCFI is a citizen of the State of Ohio and the State of Delaware. It is not a citizen of the State of California.

22. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only named defendants are considered). Therefore, Plaintiff's inclusion of DOES 1 through 50 in the Complaint is irrelevant to the questions of diversity or removal.

23. Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiff is a citizen of the State of California, and Defendant is

a citizen of the States of Ohio and Delaware. Therefore, complete diversity exists between Plaintiff and Defendant, and at least minimal diversity exists between Defendant and the putative class.

**C. <u>The Amount in Controversy Exceeds Five Million Dollars ($5,000,000)</u>**

24. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). Of note, in calculating the amount in controversy, a court must aggregate the claims of all individual class members. *Id*. § 1332(d)(6).

25. Unlike other cases, there is no anti-removal presumption for cases invoking CAFA. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

26. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). A removing defendant's notice of removal "need not contain evidentiary submissions." *Arias*, 936 F.3d at 922 (quoting *Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015). To satisfy its burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc*., 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc*., 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal citations and punctuation omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 400 (9th Cir. 2010). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover. *Arias*, 936 F.3d at 927 (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them") (quoting *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 417 (9th Cir. 2018)) (emphasis in original). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not

contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. Moreover, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922.

27. In assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). The focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)) (emphasis in original).

28. Here, Plaintiff alleges that "Defendant has engaged an ongoing and systematic scheme of wage abuse against their hourly-paid or non-exempt employees." (Compl., ¶ 21.) All of the California Labor Code violations that Plaintiff alleges contain language that such events occurred "routinely", "regularly", "[t]hroughout the time period involved in this case", and based on "policies and practices" that Defendant purportedly implemented. (*Id.*, ¶¶ 22-40.) Thus, it is entirely reasonable for Defendant to assume up to a 100% violation rate for each of Plaintiff's claims. *See, e.g.*, *Lewis*, 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (per curiam); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to the violation rates, "assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because [p]laintiff does not qualify her allegations" and "although afforded the opportunity to do so on this motion, [p]laintiff does not assert or suggest an alternative violation rate on which the Court should rely").

///

29. Although Defendant categorically denies Plaintiff's claims have any merit, whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if Plaintiff were to prevail on her First through Sixth Causes of Action on behalf of the putative classes, the requested monetary recovery would far exceed five million dollars ($5,000,000.00).

### 1. **Plaintiff's meal period claim places at least $1,544,294.45 in controversy.**

32. Plaintiff alleges every conceivable way that a company could violate an employee's meal period rights under Labor Code § 512. Plaintiff alleges that Defendant:

a. "routinely failed to permit Plaintiff and the Class to take timely and duty-free meal periods and rest periods in violation of California law" (Compl., ¶ 22);

b. "implemented policies and practices which failed to provide Plaintiff and the Class with timely and duty-free meal periods" (*id.*)

c. "routinely failed to relieve Plaintiff and the Class of all duties during their meal periods, regularly failed to relinquish control over Plaintiff and the Class during their meal periods, and regularly impeded or discouraged Plaintiff and the Class from taking thirty (30) minute uninterrupted meal breaks no later than the end of their fifth hour of work and/or from taking a second thirty (30) minute uninterrupted meal break not later than their tenth hour of work for shifts lasting more than ten (10) hours" (*id.*);

d. "did not adequately inform Plaintiff and the Class of their right to take meal periods under California law" (*id.*, ¶ 23);

e. had an "actual policy and practice … to schedule Plaintiff and the Class in a way that prohibited them from taking timely and duty-free meal periods, and to require Plaintiff and the Class to work through their meal periods" (*id.*); and

f. "failed to pay Plaintiff and the Class premium wages for meal periods that were missed, late, interrupted, or shortened" (*id.*, ¶ 24).

33. Defendant denies that any such violations occurred or that compensation is owed to Plaintiff or the putative class members. For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's allegation that violations regularly occurred and compensation is

owed. *See Lewis*, 627 F.3d at 399 ("in determining the amount [in controversy], we first look to the complaint"); *Heejin Lim v. Helio, LLC*, No. CV 11-9183 PSG (PLAx), 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any.") (internal citations omitted).

34. Meal period claims are properly considered in determining the amount in controversy. *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007). Under California law, employees who are denied the opportunity to take proper meal periods are entitled to one hour of premium pay for each day that a meal period is missed, late or interrupted. *Marlo v. UPS, Inc*., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009). Plaintiff claims entitlement to that remedy for the putative class. (Compl., ¶ 61.)

35. Plaintiff also alleges that the previously-alleged violations of Labor Code §§ 226.7 and 512(a) give rise to claims for unlawful business practices under Business and Professions Code § 17200 *et seq*. (Compl., ¶ 102.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for meal break claims is based on a four (4) year limitations period.

36. Plaintiff alleges that all of the alleged meal period violations occurred "[t]hroughout the time period involved in this case[.]" (Compl., ¶¶ 22-24.) The Complaint does not articulate any limit on the frequency of these alleged violations. Therefore, Defendant may reasonably assume a 100% violation rate. *Lewis*, 627 F.3d at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151; *Stevenson v. Dollar Tree Stores, Inc*., No. CIV S-11-1433 KJM DAD, 2011 WL 4928753, at *3-4 (E.D. Cal. Oct. 17, 2011) (defendant's calculation of potential missed meal period damages at 100% of the shifts was appropriate where plaintiff alleged that class members were routinely denied meal periods or were not compensated for meal periods).

37. Defendant retained Ariel Kumpinksy (hereinafter "Kumpinksy"), economist and Director of Stout Consulting, to perform a review timekeeping, payroll, and HRIS reports from Defendant's databases and to assess the potential monetary exposure that arises from the allegations in Plaintiff's Complaint—*i.e.* the amount in controversy. (Kumpinsky Decl., ¶¶ 1, 4.) To calculate

the amount in controversy for Plaintiff's meal period claim, Kumpinsky analyzed the reports Defendant provided to determine the number of shifts worked in the dataset that exceeded five (5) hours in length. (*Id.*, ¶ 18.) He then applied a counsel-provided assumption that 20% of those shifts were not compliant. (*Id.*, ¶ 19.) The result (rounded up to the next whole number) he multiplied by the average hourly wage rate paid to putative class members in the dataset, which was $17.22. (*Id.*, ¶¶ 15, 20.)

38. Based on that conservative estimate of a 20% violation rate and the reports reviewed, Plaintiff's meal period claim places at least $1,544,294.45 in controversy. (Kumpinsky Decl., ¶ 21.)

39. Courts have permitted a much higher assumption of up to 60% violation rates with allegations of a company-wide practice of failing to provide compliant meal breaks, along with no allegations concerning the frequency of the violations. *See Sanchez v. Abbott Labs.*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4-5 (E.D. Cal. Jun. 30, 2021) (finding a 60% violation rate for meal and rest break claims to be appropriate based on the complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums to some "but not all" class members); *Bryant*, 284 F. Supp. 3d at 1151 (holding a complaint alleging a policy and practice of meal and rest period violations with no guidance as to the frequency justifies an estimate of at least three missed meal periods and three missed rest periods per week and up to five missed meal periods and five missed rest periods per week); *Stanley v. Distribution Alts., Inc.*, No. EDCV 17-2173, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal violations reasonable where plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated").

40. Thus, Defendant's assumption of a 20% violation rate is reasonable. Defendant is not "required to comb through its records to identify and calculate the exact frequency of violations," *Rodriguez v. USF Reddaway, Inc.*, No. 2:21-cv-02270-TLN-DB, 2022 WL 3274345, at *5 (E.D. Cal.

Aug. 11, 2022) (noting courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law" based on policy and practice allegations). "[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-CV-01906-AWI, 2011 WL 2173715, at *20 (E.D. Cal. Jun. 2, 2011).

**2. <u>Plaintiff's rest break claim places at least $1,648,426.42 in controversy.</u>**

41. Plaintiff alleges every conceivable way that a company could violate an employee's rest break rights under Labor Code § 226.7. Plaintiff alleges that Defendant:

a. "routinely failed to permit Plaintiff and the Class to take timely and duty-free meal periods and rest periods in violation of California law" (Compl., ¶ 22);

b. "implemented policies and practices which prohibited Plaintiff and the Class form taking timely and duty-free rest periods" (*id.*, ¶ 25);

c. "regularly failed to provide, authorize, and permit Plaintiff and the Class to take full, uninterrupted, off-duty rest periods for every shift lasting three and one-half (3.5) to six (6) hours and/or two full, uninterrupted, off-duty rest periods for every shift lasting six (6) to ten (10) hours, and failed to make a good faith effort to authorize, permit, and provide such rest breaks in the middle of each work period" (*id.*);

d. "did not adequately inform Plaintiff and the Class of their right to take rest periods under California law" (*id.*, ¶ 26);

e. had an "actual policy and practice … to schedule Plaintiff and the Class in a way that regularly prohibited them from taking timely and duty-free rest periods, and to require Plaintiff and the Class to work through their rest periods" (*id.*); and

f. "failed to pay Plaintiff and the Class premium wages for rest periods that were missed, late, interrupted, or shortened" (*id.*, ¶ 24).

42. Defendant denies that any such violations occurred or that compensation is owed to Plaintiff or the putative class members. For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's allegation that violations regularly occurred and compensation is owed. *Lewis*, 627 F.3d at 399; *Lim*, 2012 WL 359304 at *2.

43. Rest period claims are properly considered in determining the amount in controversy. *Muniz*, 2007 WL 1302504 at *4. Under California law, employees who are denied the opportunity to take proper rest periods are entitled to one hour of premium pay for each day that a rest period is missed or interrupted. *Marlo*, 2009 WL 1258491 at *7. Plaintiff claims entitlement to that remedy for the putative class. (Compl., ¶ 70.)

44. Plaintiff also alleges that the previously-alleged violations of Labor Code § 226.7 give rise to claims for unlawful business practices under Business and Professions Code § 17200 *et seq*. (Compl., ¶ 102.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for rest break claims is based on a four (4) year limitations period.

45. Plaintiff alleges that all of the alleged rest period violations occurred "[t]hroughout the time period involved in this case[.]" (Compl., ¶¶ 25-27.) The Complaint does not articulate any limit on the frequency of these alleged violations. Therefore, Defendant may reasonably assume a 100% violation rate. *Lewis,* 627 F.3d at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151.

46. To calculate the amount in controversy for this claim, Kumpinsky analyzed the business records Defendant provided to determine the number of shifts represented in the dataset of at least three and one-half (3.5) hours in length. (Kumpinsky Decl., ¶¶ 22-24.) He multiplied that number by a counsel-provided assumed violation rate of 20% (rounded up to the next whole number), then multiplied that result by the average hourly wage. (*Id.*)

47. Based on Defendant's records and a conservative estimate of a 20% violation rate, Plaintiff's rest breaks claim places <u>at least $1,648,426.42</u> in controversy. (Kumpinsky Decl., ¶ 24.)

48. Courts have permitted well over 20% violation rates, and in fact up to a 60% violation rates, with allegations of a company-wide practice of failing to provide compliant rest breaks, along with no allegations concerning the frequency of the violations. *See Sanchez*, 2021 WL 2679057 at *4-5; *Bryant*, 284 F. Supp. 3d at 1151. Thus, Defendant's assumptions and calculations are more than reasonable.

///

**3. Plaintiff's claim for waiting time penalties places at least $6,156,516.00 in controversy.**

49. Plaintiff alleges that, "[t]hroughout the time period involved in this case, Defendant regularly failed to pay Plaintiff and the Class all wages owed to them upon discharge or resignation," and that "Plaintiff and the Class did not receive payment of all final wages owed to them upon discharge or resignation, including overtime compensation and minimum wages within any time permissible under California Labor Code section 202." (Compl., ¶ 34.) More specifically, Plaintiff alleges that, "[d]uring the relevant time period, the employment of Plaintiff and many other Class Members with Defendant ended, *i.e.* was terminated by quitting or discharge" but that "Defendant intentionally and willfully failed to pay Plaintiff and other Class Members who are no longer employed by Defendant all of their wages, earned and unpaid, including but not limited to minimum wages, straight time wages, and overtime wages, within seventy-two (72) hours of their leaving Defendant's employ." (*Id.*, ¶ 78.)

50. If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code § 201, or within 72 hours after resignation, as required by Labor Code § 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. *Id.* § 203. An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed. Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful. "A willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs., tit. 8, § 13520. Plaintiff claims entitlement to these penalties for all putative class members "who are no longer employment by Defendant[.]" (Compl., ¶ 81.)

51. To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of thirty (30) days, depending on the length of delay in receipt of wages. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied

by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, LLC*, No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. Jul. 2, 2015).

52. For amount-in-controversy calculations on removal, where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); *see also Crummie v. CertifiedSafety, Inc.*, No. 17-cv-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

53. Defendant denies any such penalties are owed to Plaintiff or any putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the penalties are owed. Plaintiff's claim is also derivative of her other wage claims, including the class-wide meal and rest period claims, for which Plaintiff alleges violations occurred "routinely," "regularly," "[t]hroughout the time period involved in this case," and based on "policies and practices" that Defendant purportedly implemented. (Compl., ¶¶ 22-27.)

54. Based on Plaintiff's allegations, it is reasonable to assume that 100% of the former, non-exempt employees (in the three-year § 203 limitations period) are entitled to the maximum thirty (30) days' wages. *See Crummie*, 2017 WL 4544747 at *3 (upholding assumption that "waiting time penalties accrued to the thirty-day limit" based on allegations of a pattern or practice of withholding wages owed); *Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (finding that an assumption of the maximum thirty-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants *never* paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due") (emphasis in original); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days ... it is reasonable to assume based on the FAC that Plaintiff *could* obtain statutory penalty of maximum 30 days.") (emphasis in original); *Mariscal v. Ariz. Tile, LLC*, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021)

(same); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."); *Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *6 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)" support an estimated 100% violation rate for waiting time penalties).

55. Thus, to calculate the amount in controversy for this claim, Kumpinsky analyzed the business records Defendant provided to determine the number of employees represented in the dataset who separated from employment during the three (3) year period prior to the filing of the Complaint, including whether those former employees separated at least thirty (30) days' prior to Kumpinsky's analysis. (Kumpinsky Decl., ¶ 25.) Kumpinsky assumed an average of eight (8) hours worked per day. (*Id.*) He then calculated thirty (30) days wages at the average wage rate paid to employees. (*Id.*)

56. Based on Defendant's records and Plaintiff's allegations, Plaintiff's waiting time penalties claim places at least $6,156,516.00 in controversy. (Kumpinsky Decl., ¶ 26.)

**4. Plaintiff's wage statement claim places at least $902,350.00 in controversy.**

57. Plaintiff alleges that, "[t]hroughout the time period involved in this case, Defendant regularly failed to provide complete or accurate wage statements to Plaintiff and the Class." (Compl., ¶ 36.) Plaintiff alleges that Defendant did this "intentionally and willfully[.]" (*Id.*, ¶ 90.) Plaintiff seeks statutory penalties pursuant to Labor Code § 226(e). (Compl. Prayer for Relief, ¶ 40.)

58. Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of

///

four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

59. Plaintiff's claim for wage statement penalties is wholly derivative of her other wage claims; she alleges that "[t]he deficiencies included, *inter alia*, the failure to include the total number of hours worked, the actual gross wages earned, and the correct rates of pay." (Compl., ¶¶ 36, 90.) Premium pay for meal and rest break violations pursuant to Labor Code § 226.7 constitute wages "that must be reported on statutorily required wage statements" *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 102 (2022). Plaintiff's broadly pled meal and rest break claims put at issue every wage statement for every pay period during the one-year statutory period from December 31, 2021 to the present. *See, e.g.*, *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *8 (E.D. Cal. Jul. 20, 2020) (100% assumed violation rate was reasonable based on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same).

60. To calculate the amount in controversy for this claim, Kumpinsky identified putative class members who were provided a wage statement from December 7, 2021 through December 31, 2022, assigned a penalty of $50 for the first pay period and $100 for each subsequent pay period and limited each putative class member's penalty to $4,000. (Kumpinsky Decl., ¶¶ 27-28.) Kumpinsky confirmed that Defendant paid the putative class members on a biweekly basis during the one-year period prior to the filing of the Complaint. (*Id.*, ¶ 8.)

61. Based on Plaintiff's allegations and Defendant's records, Plaintiff's wage statement penalties claim places at least $902,350.00 in controversy. (Kumpinsky Decl., ¶ 28.)

**5. Plaintiff's claim for Labor Code § 210 penalties places at least $1,804,700.00 in controversy.**

62. Plaintiff alleges that, "[t]hroughout the time period involved in this case, Defendant regularly failed to pay Plaintiff and the Class all wages within any time permissible under California law, including *inter alia*, California Labor Code section 204." (Compl., ¶ 35.) Plaintiff alleges that Defendant did this "intentionally and willfully[.]" (*Id.*, ¶ 86.)

63. All wages earned in employment are due and payable at least twice during each calendar months on dates designated in advance by the employer. Cal. Labor Code § 204. The penalty for failure to pay wages in a timely manner is $100 for the first violation and $200 for each subsequent violation with an additional penalty of 25% of the wages owed. Cal. Labor Code § 210(b).

64. This is a derivative claim; Plaintiff contends that Defendant violated Labor Code § 204 because "Plaintiff and the Class did not receive payment of all wages, including overtime compensation and minimum wages, meal and rest period premiums." (Compl., ¶ 35.) Similar to wage statement penalties, it is reasonable here to assume a 100% violation rate because Plaintiff's other wage claims are pled without limitation as to frequency of alleged violations. Every pay period is at issue. Because the remedy for this claim is statutory penalties, the statute of limitations is one year.

65. To calculate the amount in controversy for this claim, Kumpinsky identified putative class members who were provided a wage statement (*i.e.*, worked at least one pay period) from December 7, 2021 through December 31, 2022. (Kumpinsky Decl., ¶ 30.) He then assigned a penalty of $100 for the first pay period worked during that time and $200 for each subsequent pay period. It is not feasible at the removal stage to estimate an amount in controversy arising from the additional penalty of 25% of wages owed. (*Id.*) Based on Plaintiff's allegations and Defendant's records, Plaintiff's claim for § 210(b) penalties places at least $1,804,700.00 in controversy. (*Id.*, ¶ 31.)

**6. Plaintiff's claim for attorney's fees places at least $3,014,071.72 in controversy.**

66. Plaintiff explicitly seeks attorneys' fees should she recover for any of the claims in this action. (*See* Compl. Prayer for Relief.) Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. *See Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998*), overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6,

2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (quoting *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2008 WL 3385452, at *3 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

67. Defendant has established that Plaintiff's claims for meal and rest break premiums, waiting time penalties, 210(b) penalties, and 226(e) penalties place at least $12,056,286.87 in controversy. (Kumpinsky Decl., ¶¶ 10, 36.) Plaintiff has not indicated she will seek less than twenty-five percent (25%) of a common fund in attorneys' fees. Defendant denies any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the attorneys' fees are owed. Given the above valuation of this matter, the prospective attorneys' fees would value at 25% of the above number, or <u>least $3,014,071.72</u>.

**7. <u>Summary of the Amount in Controversy</u>**

68. The total amount placed in controversy is summarized as follows:

| Claim | Amount in Controversy |
|---|---|
| Meal breaks | $1,544,294.45 |
| Rest breaks | $1,648,426.42 |
| Wage statements | $902,350.00 |
| Failure to Pay All Wages at Termination | $6,156,516.00 |
| Failure to Pay In Timely Manner | $1,804,700.00 |

Total Placed in Controversy by Claims = $12,056,286.87

Attorney fees at 25% $3,014,071.72

**<u>Grand Total---$15,070,358.59</u>**

69. Plaintiff's allegations therefore place more than the requisite five million dollars ($5,000,000) in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

## III. DEFENDANT HAS SATISFIED THE REQUIREMENTS OF 28 U.S.C. § 1446

70. In accordance with 28 U.S.C. § 1446(a), this notice of removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California for the County of Alameda is located within the federal Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

71. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers served upon Defendant CCFI Companies, LLC are attached as Exhibit A to the Declaration of Bridgette Roman.

72. In accordance with 28 U.S.C. § 1446(d), Defendant's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the Alameda County Superior Court. Defendant shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

73. As required by Fed. R. Civ. P. 7.1, Defendant concurrently files its Certificate of Interested Parties with this filing of the Notice of Removal.

## IV. CONCLUSION

74. For the foregoing reasons, Defendant CCFI COMPANIES, LLC hereby removes the above-titled action to the United States District Court for the Eastern District of California.

75. In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests that this Court set an evidentiary hearing so that they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED: July 27, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Kyle A. Wende*
Michael J. Nader
Alexandra M. Asterlin
Kyle A. Wende

Attorneys for Defendant
CCFI COMPANIES, LLC

**CERTIFICATE OF SERVICE**

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Sacramento in the office of a member of the bar of this court at whose direction the service was made. My business address is 500 Capitol Mall, Suite 2500, Sacramento, California 95814. My email address is: elaine.blizzard@ogletree.com.

On July 27, 2023, I served the following document(s):

**DEFENDANT CCFI COMPANIES, LLC'S**
**NOTICE OF REMOVAL TO U.S. DISTRICT COURT**

BY MAIL: I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid:

| | |
|---|---|
| HEATHER DAVIS<br>heather@protectionlawgroup.com<br>AMIR NAYEBDADASH<br>amir@protectionlawgroup.com<br>CARLOS JIMENEZ<br>carlos@protectionlawgroup.com<br>PROTECTION LAW GROUP, LLP<br>237 California Street<br>El Segundo, CA 90245<br>Telephone: (424) 290-3095<br>Facsimile: (866) 264-7880 | Attorneys for Plaintiff<br>MAHOGANY LOVETTE |

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 27, 2023, at Sacramento, California.

Elaine M. Blizzard