UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHOGANY LOVETTE,<br><br>    Plaintiff,<br><br>v.<br><br>CCFI COMPANIES LLC,<br><br>    Defendant. | Case No. 3:23-cv-03755-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 16 |

Mahogany Lovette brings a wage and hour putative class action against CCFI Companies, LLC ("CCFI"), arising from her store manager work for Defendant from October 2021 through April 2022. Defendant moves to compel arbitration according to the terms of an arbitration agreement Lovette signed in 2018, during an earlier period of employment with CCFI. Lovette contends the 2018 arbitration agreement is unenforceable and should not apply to Lovette's later period of CCFI employment. After carefully considering the briefing, and with the benefit of oral argument on December 19, 2023, the Court GRANTS CCFI's motion to compel arbitration. The 2018 arbitration agreement delegates to the arbitrator the decision of whether the 2018 arbitration agreement applies to this dispute. So, the arbitrator must decide whether the 2018 arbitration agreement applies to Lovette's 2021 through 2022 employment period.

## BACKGROUND

Lovette asserts various California Labor Code Violations and unfair business practices allegations stemming from Defendant's failure to pay overtime compensation, provide meal periods, authorize and permit rest periods, pay minimum wage, pay wages, provide accurate wage statements, maintain accurate time and payroll records, and reimburse necessary business-related

expenses. (Dkt. No. 4-1 ¶ 1.)[1]

Lovette first joined CCFI on July 24, 2017.[2] (Dkt, No. 19-1 ¶ 2.) She signed an arbitration agreement on June 13, 2017, and then signed that same agreement again on July 24, 2017 due to "a simple accident of paperwork."[3] (*Id.* ¶ 4; Dkt. No. 35-1 ¶ 2.) She resigned from CCFI in June 2018, then was re-hired into her previous position in October 2018. (Dkt, No. 19-1 ¶ 2.) After she was re-hired, Lovette signed a third arbitration agreement on October 29, 2018. (*Id.* ¶ 4.) The content of all three arbitration agreements is identical. (Dkt. No. 35-1 ¶ 4.) The arbitration agreements provide, in part:

> 1. Scope of Arbitration. Employer and Employee mutually agree to submit to binding arbitration all covered disputes and claims which Employer and Employee have or will have against each other. This Agreement includes all disputes and claims which either Employer or Employee has or will have against the other, . . .

(Dkt. No. 19-1 at 5.) On September 30, 2019, Plaintiff abandoned her job by failing to report for her scheduled shift. (Dkt, No. 19-1 ¶ 2.)

In August of 2021, Lovette began working for Check Into Cash of California, Inc. ("Check Into Cash"). (Dkt. Nos. 41-1 ¶ 5, 35-2 ¶ 5.) According to Lovette's personnel records, she clicked her assent to Check Into Cash's Employment Agreement—which included an arbitration agreement—on August 24, 2021, at 5:04 p.m. (Dkt. No. 35-2 at 6-10, ¶ 8.) Those records also indicate Donna Espinoza, a district manager for Checks Into Cash, clicked her agreement that she witnessed Lovette's signature at 5:38 pm. (Dkt. No. 35-2 at 6-10, ¶ 8.) However, Lovette contends she "never met with Donna Espinoza to review and electronically sign documents on any electronic platform." (Dkt. No. 41-1 ¶ 7.) Instead, Lovette asserts she met with someone named

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] When Lovette was first hired by CCFI, the business was known as Checksmart Financial LLC. (Dkt. No. 16-2 ¶ 2.)
[3] Lovette objects to this testimony, along with much of the testimony from the two declarations CCFI submitted with its supplemental briefing. (Dkt. No. 42.) None of the testimony Lovette objects to is necessary for the Court's holding in this Order. Moreover, this District's local rules prohibit Lovette from lodging a separate statement of objections, as "[a]ny evidentiary and procedural objections to the motion must be contained within the brief." N.D. Cal. Civ. L.R. 7-3(a).

"Monta" who "created passwords for the online systems" associated with the job, but even while with Monta, Plaintiff asserts she "never scrolled through down to electronically sign an arbitration agreement." (*Id.* ¶ 8.)

In approximately October 2021, CCFI acquired Check Into Cash of California, Inc. and absorbed many of its employees—including Lovette. (Dkt, No. 19-1 ¶ 3, Dkt. No. 41-1 ¶ 11.) So, Plaintiff again became employed by CCFI. (Dkt. No. 41-1 ¶ 11.) Plaintiff worked for CCFI until she resigned on April 22, 2022. (Dkt. No. 35-1 ¶ 5.)

Lovette filed her action in California state court and Defendant removed the action to this Court. (Dkt. No. 1.) Defendant then filed a Motion to Compel Arbitration. (Dkt. No. 16.) Specifically, Defendant seeks to enforce the Mutual Dispute Arbitration Agreement that Plaintiff signed on October 29, 2018—the third arbitration agreement Plaintiff signed. (Dkt. No. 35 at 7.) The Court requested supplemental briefing as to whether Plaintiff's final period of employment with Defendant—the period from October 2021 until April 22, 2022—is covered by the 2018 arbitration agreement.

## DISCUSSION

CCFI argues Lovette's final period of employment is covered by the 2018 arbitration agreement because the agreement states it applies to disputes the employer and employee have "or will have." In the alternative, if "the Court declines to enforce" that agreement as to the 2021-2022 period of Plaintiff's employment at issue in this lawsuit, then CCFI insists the 2021 arbitration agreement applies to Plaintiff's claims. (*Id.* at 10.) So, the Court first considers whether the 2018 arbitration agreement compels arbitration of Plaintiff's claims.

In resolving a motion to compel arbitration, this Court must first decide two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (cleaned up).

CCFI argues the arbitration agreement delegates the decision of these gateway issues to the arbitrator. (Dkt. Nos. 16-1 at 14; 35 at 10-11.) The Federal Arbitration Act "allows parties to

3

agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions," including "whether [the parties'] arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).

The Ninth Circuit instructs courts to apply a "more rigorous standard" than a traditional application of contract principles "in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up). However, if parties have delegated the arbitrability question to the arbitrator, then "a court may not override the contract . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

Section 6 of the 2018 arbitration agreement, titled "Applicable Law" provides:

> With the exception of claims regarding the validity, scope or enforceability (including unconscionability) of the Class Action Waiver, addressed below, the Parties agree to submit claims to the arbitrator regarding issues of arbitrability, the validity, scope, and enforceability of this Agreement, his or her jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims this Agreement is unconscionable.

(Dkt. No. 19-1 at 6.) So, the 2018 arbitration agreement itself contains a delegation clause that clearly and unmistakably reflects the parties agreed determination of all gateway issues are for an arbitrator, except those relating to the "validity, scope or enforceability (including unconscionability) of the Class Action Waiver."[4] *See Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 999–1000 (9th Cir. 2023) (holding contract language explaining "[a]ll challenges to the

---

[4] Plaintiff argues the Class Action Waiver is unconscionable. However, the Court does not reach this issue because, before deciding whether that waiver is unconscionable, the arbitrator must decide whether the 2018 arbitration agreement applies to Plaintiff's claims. If the arbitrator decides the 2018 agreement does not apply to Plaintiff's claims, there will be no reason for the Court to decide the validity of the 2018 Class Action Waiver. Or, to put it another way, Plaintiff will not have standing to challenge a Waiver in an arbitration agreement that does not apply to her claims.

interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement" is a delegation clause that delegates to the arbitrator gateway questions of arbitrability, "such as whether the agreement covers a particular controversy"); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (language granting arbitrator the "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement," is an delegation clause). Whether the 2018 agreement applies to claims arising out of Lovette's final employment period, or any other employment period, is itself a question of the "scope" of the 2018 arbitration agreement. So, that question is delegated to the arbitrator according to the explicit terms of the arbitration agreement.

Despite the arbitration agreement's delegation clause, Lovette asserts this Court should find the entire agreement "unenforceable" because "it is both substantively and procedurally unconscionable." (Dkt. No. 26 at 13.) "'[B]ecause a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator,' the court's initial inquiry focuses on whether the agreement to delegate arbitrability—the delegation clause—is itself unconscionable." *Lim v. TForce Logistics*, LLC, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015)). Because, at this point, CCFI is seeking to enforce the specific delegation provision, rather than the contract as a whole, Lovette must make "arguments specific to the delegation provision," rather than arguing "that the [Arbitration Clause] as a whole is unconscionable under state law,"—since the question of whether the contract as a whole is unconscionable "is for the arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question." *Brennan*, 796 F.3d at 1133 (9th Cir. 2015) (cleaned up).

Lovette's written submissions do not make any unconscionability argument that focuses on the delegation clause, and she did not make any such claim at oral argument. So, Lovette's unconscionability argument fails. *See Bielski v. Coinbase*, 2023 WL 8408123 *3, 4 (9th Cir. Dec. 5, 2023) (holding a party objecting to an arbitration agreement with a delegation clause must "specifically" challenge the delegation provision); *Brennan v. Opus Bank*, 796 F.3d 1125, 1133

(9th Cir. 2015) (holding a challenge to the arbitration agreement *as a whole* is insufficient to challenge the validity of the delegation provision).

In sum, the delegation clause in the 2018 agreement that Lovette admits she signed requires the Court to compel arbitration as to whether Lovette's claims are governed by the 2018 arbitration agreement.

## CONCLUSION

Whether the 2018 arbitration agreement applies to all of Lovette's claims is a question for the arbitrator. Accordingly, the Court GRANTS Defendant's Motion to Compel Arbitration, and compels arbitration as to whether the 2018 arbitration agreement governs all claims in this case. The Court STAYS this action pending resolution of arbitration.

CCFI requests judicial notice of the fact Check Into Cash of California, Inc. is incorporated in Delaware with its principal place of business in Ohio. (Dkt. No. 44-3.) This fact is irrelevant to the Court's Order, so the Court DENIES as moot Defendant's request for judicial notice.

A Further Case Management Conference is set for June 13, 2024, at 1:30pm via Zoom video. An updated Case Management Statement is due by June 6, 2024. If the arbitrator rules before that date, the parties may request an earlier case management conference.

This Order disposes of Docket No. 16.

**IT IS SO ORDERED.**

Dated: December 20, 2023

JACQUELINE SCOTT CORLEY
United States District Judge