UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAHOGANY LOVETTE,

Plaintiff,

v.

CCFI COMPANIES LLC,

Defendant.

Case No.  23-cv-03755-JSC

**ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 59, 72

Plaintiff, on behalf of a putative class, sues Defendant for California Labor Code violations and unfair business practices arising from her 2021-2022 employment.  (Dkt. No. 4-1.)[1]  The Court previously held the parties' 2018 arbitration agreement was valid and delegated to an arbitrator the question whether Plaintiff's claims were within the scope of that agreement.  (Dkt. No. 49.)  The arbitrator then found the 2018 arbitration agreement does not encompass Plaintiff's claims arising from her 2021-2022 employment.  (Dkt. No. 59-1.)  So, Defendant now moves to compel arbitration pursuant to a purported 2021 arbitration agreement.  (Dkt. No. 59.)  However, as explained below, the parties' briefing indicates there are factual disputes regarding contract formation.  The Court therefore VACATES the May 19, 2026 hearing and directs the parties to meet and confer and file a joint statement.

**BACKGROUND**

I.      **RELEVANT FACTS**

Plaintiff first worked for Defendant from July 24, 2017 until her resignation in June 2018. (Dkt. No. 49 at 2 (citing Dkt. No. 19-1 ¶ 2).)  In 2018, Defendant re-hired Plaintiff into her

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

previous position, and she worked for Defendant until she "abandoned her job by failing to report for her scheduled shift" on September 30, 2019.  (*Id.* (citing Dkt. No. 19-1 ¶ 2).)  Plaintiff signed three identical arbitration agreements on June 13, 2017; July 24, 2017; and October 29, 2018.  (*Id.* (citing Dkt. No. 19-1 ¶ 4; Dkt. No. 35-1 ¶¶ 2, 4).)

In August 2021, Plaintiff began working for Check Into Cash of California, Inc. ("CIC").  (*Id.* (citing Dkt. No. 41-1 ¶ 5; Dkt. No. 35-2 ¶ 5).)  But Defendant acquired CIC around October 2021 and absorbed many of its employees, including Plaintiff.  (*Id.* at 3 (citing Dkt. No. 19-1 ¶ 3; Dkt. No. 41-1 ¶ 11).)  So, Plaintiff again became employed by Defendant, where she worked until her resignation on April 22, 2022.  (*Id.* (citing Dkt. No. 41-1 ¶ 11; Dkt. No. 35-1 ¶ 5).)

## II.    PROCEDURAL HISTORY

On June 14, 2023, Plaintiff, on behalf of a putative class, sued Defendant in California state court for violating:

> (1) California Labor Code §§ 510 and 1198;
> (2) California Labor Code §§ 226.7 and 512(a);
> (3) California Labor Code § 226.7;
> (4) California Labor Code §§ 1194, 1197, and 1197.1;
> (5) California Labor Code §§ 201, 202, and 203;
> (6) California Labor Code §§ 204 and 210;
> (7) California Labor Code § 226(a);
> (8) California Labor Code §§ 2800 and 2802; and
> (9) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, based on predicate Labor Code violations.

(Dkt. No. 4-1.)  Defendant removed the action to this Court, (Dkt. No. 1), and moved to compel arbitration, (Dkt. No. 16).  In supplemental briefing, Defendant argued the parties entered into an arbitration agreement in 2018, and the 2018 agreement delegates the question whether it governs Plaintiff's claims to the arbitrator.  (Dkt. No. 35.)  The Court agreed with Defendant; specifically, the Court found the parties had formed a valid arbitration agreement in 2018, and held "[w]hether the 2018 agreement applies to claims arising out of [Plaintiff's] [2021-2022] employment period . . . is a question of the 'scope of the 2018 arbitration agreement, . . . [which] is delegated to the arbitrator according to the explicit terms of the arbitration agreement."  (Dkt. No. 49 at 5.)  So, on December 20, 2023, the Court granted Defendant's motion to compel arbitration "as to whether the 2018 arbitration agreement governs all claims in this case" and stayed this action pending

2

resolution of arbitration.  (*Id.* at 6.)

The parties then proceeded in arbitration.  However, on June 9, 2025, the arbitrator ruled "[t]he claims arising from [Plaintiff's] third period of employment," i.e., from 2021 to 2022, "are not subject to arbitration under the [agreement] signed by [Plaintiff] in October 2018."  (Dkt. No. 59-1 at 8.)  Defendant now moves to compel arbitration of Plaintiff's claims pursuant to a purported 2021 agreement.  (Dkt. No. 59.)

### III.    DEFENDANT'S EVIDENCE

Defendant presents an Employee Agreement including, among other things, an arbitration provision:

> Employee agrees that any employment related dispute, controversy, or claim that [] Employee may have with the company and/or any of its parents, affiliates, subsidiaries, employees, officers, directors, clients, customers, or alleged agents, in their capacity as such or otherwise . . . shall be resolved only through binding individual arbitration and not through litigation in federal, state, or local court ('Arbitration Agreement')."

(Dkt. No. 59-3 at 5.)  This Employee Agreement includes the initials "ML" and a checked box by "Employee Signature," which states "[c]hecking the checkbox above is equivalent to a handwritten signature."  (*Id.* at 7-8.)  Below the checked box is Plaintiff's name and a time stamp for August 24, 2021 at 5:04 p.m.  (*Id.* at 8.)  There is another checked box for a "Witness Signature," which includes the name Donna Espinoza and a time stamp for August 24, 2021 at 5:38 p.m.  (*Id.*)

Defendant also includes a declaration from Edgar Bran, who was CIC's Regional Manager and supervised District Manager Donna Espinoza, Plaintiff's direct supervisor, in August 2021. (Dkt. No. 59-2 ¶¶ 1-2.)  Mr. Bran oversaw the new employee "onboarding process as it related to documents signed by new employees, including employees' Employment Agreements."  (*Id.* ¶ 3.) According to Mr. Bran, a new employee would meet with their District Managers, who "provided a laptop on which the employee could review onboarding documents including the Employment Agreement with the arbitration provisions."  (*Id.* ¶ 6.)  While "present in the room," the District Manager would observe the new employee's "process of review and affirmation" of the documents.  (*Id.*)  CIC used a "web-based platform" called RedCarpet Onboarding, which

United States District Court
Northern District of California

"displayed each document, one at a time, and required the employee to scroll through the entire document before being able to sign it." (*Id.* ¶ 7.)  In addition, "[t]o electronically sign a document, the employee had to enter their Social Security Number and then click a button to proceed," at which point RedCarpet recorded the signature, along with "the exact date and time the employee clicked that button." (*Id.*)  CIC also "required a witness to electronically sign, and that witness role would be filled by the supervisor who sat in-person with the employee while the employee completed the onboarding process." (*Id.*)  "Once the employee initialed and signed documents on the platform," no CIC employee "could modify any records." (*Id.*)

Mr. Bran declares Plaintiff's "personnel records show that she completed her onboarding paperwork on August 24, 2021." (*Id.* ¶ 5.)  Specifically, "[a]ccording to [her] personnel records, [Plaintiff] clicked her assent to the Employment Agreement on August 24, 2021 at 5:04 p.m." and "initialed the bottom of the arbitration section," and "Donna Espinoza witnessed [Plaintiff's] signature, which Ms. Espinoza noted on the platform the same day at 5:38 p.m." (*Id.* ¶ 8.)  Furthermore, "[b]ased on the function of the platform, [Plaintiff] could not have signed any document without first scrolling through the entire document and entering her Social Security Number," and   (*Id.*)

The Employee Agreement also includes an opt-out procedure.  (*Id.* ¶ 10; *see also* Dkt. No. 59-3 at 7-8.)  "To opt-out of the arbitration provision, a new hire could send written notice to the company's Human Resources department," and it would be "saved automatically in the employee's personnel file." (Dkt. No. 59-2 ¶ 10.)  Mr. Bran declares CIC "did not require newly hired employees to agree to the arbitration provision as a mandatory condition of employment," but he has "reviewed [Plaintiff's] personnel records [] and confirmed that there is no opt-out notice." (*Id.*)

In addition, Defendant's Director of Operations Christopher Dunn declares when Defendant merged with CIC, all of CIC's employment agreements were assigned to Defendant. (Dkt. No. 59-3 ¶¶ 1-3.)  Mr. Dunn has confirmed Plaintiff's employment agreement was assigned to Defendant, and at the time of her termination, Defendant employed Plaintiff.  (*Id.* ¶¶ 4-5.)

United States District Court
Northern District of California

4

## IV.    PLAINTIFF'S EVIDENCE

Plaintiff declares she began working for CIC in August 2021.  (Dkt. No. 66-1 ¶ 5.)  During her employment with CIC and Defendant, Plaintiff "never met with Donna Espinoza to review and electronically sign documents on any electronic platform," and "the interactions [she] had with Ms. Espinoza were generally limited to telephone conversations and one or two brief, in-person interactions."  (*Id.* ¶ 7.)  Plaintiff did, however, meet with "Monta after Monta hired [her] to work for [CIC]."  (*Id.* ¶ 8.)  During that meeting, Monta "created passwords for the online systems [she] would need to access to perform [her] job duties."  (*Id.*)  However, "Monta and [Plaintiff] never scrolled through documents to electronically sign an arbitration agreement" or "electronically sign the [attached] Employment Agreement."  (*Id.*)  Monta also never told Plaintiff she was "signing an arbitration agreement" or "giving up [her] legal right to a trial by jury."  (*Id.* ¶ 9.)  Throughout Plaintiff's employment with CIC, she "was never told to electronically sign an arbitration agreement by anyone else" and "never gave anyone authority to attach an electronic signature on [her] behalf to the Employment Agreement."  (*Id.* ¶ 9.)

Although on August 9, 2021, Plaintiff manually signed a "Job Description" document, she "was not told this was somehow related to any arbitration agreement at all."  (*Id.* ¶ 10; *see also* Dkt. No. 66-1 at 6-7.)  In addition, around October 2021, Plaintiff "was informed" Defendant had purchased CIC and her "pay and all other agreements" with CIC "would be honored by Defendant."  (Dkt. No. 66-1 ¶ 11; *see also* Dkt. No. 66-1 at 9.)

### DISCUSSION

The Federal Arbitration Act ("FAA") governs arbitration agreements "evidencing a transaction involving commerce" and provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract."  9 U.S.C. § 2.  Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," so courts must "enforce them according to their terms."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted).  In resolving a motion to compel arbitration under the FAA, "a court's inquiry is limited to two gateway issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks and citation omitted). "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (cleaned up).

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *See Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). When, as here, "the making of the arbitration agreement" is at issue, the summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4). To prevail under the summary judgment standard, Defendant must show there is no genuine issue as to any material fact regarding formation of the arbitration agreement. *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, to deny the motion to compel arbitration, the Court must find no reasonable trier of fact could find an agreement was made. *See Hansen*, 1 F.4th at 672. "[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.*; *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."). In determining whether a genuine issue of fact defeats immediately compelling arbitration, the court draws all reasonable inferences from the facts in favor of the party opposing arbitration, just as on a summary judgment motion all reasonable inferences of fact are drawn in favor of the party opposing summary judgment. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

## I.    FORMATION OF ARBITRATION AGREEMENT

"State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citation omitted). Under California law, contract formation requires "a manifestation of mutual assent." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). "Mutual assent may be manifested by written or spoken words, or by conduct." *Id.* "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson*, 771 F.3d

6

at 565.

"[D]efendants may meet their *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature." *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). However, once a plaintiff "challenge[s] the validity of that signature in [their] opposition, defendants [are] then required to establish by a preponderance of the evidence that the signature was authentic." *Id.*; *cf. Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (explaining the defendant faced a lower burden because the plaintiff did not "challenge the authenticity of his signature or the prima facie validity of the arbitration agreement," and instead "conceded that he [was] bound by a valid agreement"). In California, "an electronic signature has the same legal effect as a handwritten signature." *See Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 843 (2014) (citing Cal. Civ. Code § 1633.7). Electronic signatures may be authenticated through evidence it was "the act of the person" who purportedly signed it, which may be done "in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *See* Cal. Civ. Code § 1633.9(a).

In opposing Defendant's motion to compel arbitration, Plaintiff "denies that she was ever presented with, or signed, the [Employee] Agreement." (Dkt. No. 66 at 13 (cleaned up).) Defendant therefore must show there is no factual dispute regarding formation of the arbitration agreement: specifically, that there is no factual dispute ***Plaintiff*** added the initials and checked the box on the Employee Agreement. Defendant has not done so.

Defendant primarily relies on Mr. Bran's explanation of CIC's process for obtaining signatures, pursuant to which Plaintiff should have met in-person with Ms. Espinoza to review and sign the Employee Agreement. But Plaintiff declares she "never met with [Ms.] Espinoza to review and electronically sign documents on any electronic platform." (Dkt. No. 66-1 ¶ 7.) Furthermore, although Defendant relies on Ms. Espinoza's electronic signature as a witness to Plaintiff's signature, Defendant presents no evidence Ms. Espinoza herself checked the box or otherwise witnessed Plaintiff's signature. (*See* Dkt. No. 59-2 ¶ 11 (noting Ms. Espinoza "is no longer with the Company").) So, there remain factual disputes regarding whether CIC, pursuant to

United States District Court
Northern District of California

United States District Court
Northern District of California

its declared process, obtained Plaintiff's signature on the Employment Agreement.

Defendant also relies on Mr. Bran's declaration an "employee had to enter their Social Security Number" before checking the box.  (Dkt. No. 59-2 ¶ 7.)  In *Espejo v. Southern California Permanente Medical Group*, 246 Cal. App. 4th 1047 (2016), the court found the defendant had shown the plaintiff made the electronic signature because by "detail[ing] [its] security precautions regarding transmission and use of an applicant's unique username and password," the defendant had demonstrated a "process for signing documents and protecting the privacy of the information with unique and private user names and passwords." *See id.* at 1062.  In contrast, Defendant presents no evidence Plaintiff's Social Security number was private; Defendant has not, for example, shown Plaintiff did not share her Social Security number with others at CIC or, if she did, that CIC secured that information.  *See Smith v. Rent-A-Ctr., Inc.*, No. 1:18-CV-01351-LJO-JLT, 2019 WL 1294443, at *7 (E.D. Cal. Mar. 21, 2019) (holding insufficient a declaration the plaintiff added his signature "by entering his unique and secret password" absent evidence of "security measures for protecting passwords, or for transmitting and storing information such as passwords and forms," or explanation "whether [anyone else] might have access to Plaintiff's password").  Because Defendant's evidence does not "foreclose the possibility that other individuals could have accessed Plaintiff's personnel files and/or signed the agreement," it "lacks the necessary detail to authenticate the signature on the arbitration agreement as Plaintiff's." *See Zamudio v. Aerotek, Inc.*, 698 F. Supp. 3d 1202, 1209 (E.D. Cal. 2023) (holding the submission of "detailed biographical information" insufficient because the defendant did not explain whether that information was protected or private).  Ultimately, Defendant's evidence checking the box required entering Plaintiff's Social Security number is insufficient to establish it is undisputed Plaintiff checked the box.

Because Plaintiff has presented evidence from which a reasonable trier of fact could find the initials and checked box on the Employee Agreement were not Plaintiff's act, there is a factual dispute regarding the arbitration agreement's formation.  So, the Court cannot grant Defendant's motion to compel arbitration.

United States District Court
Northern District of California

## II.     WAIVER

Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quotation marks and citation omitted). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." *Id.* "[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). "There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [courts] consider the totality of the parties' actions." *Id.* at 471 (quotation marks and citation omitted). "[A] party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time to take advantage of being in court." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) (cleaned up). "[T]he party opposing arbitration [] bears the burden of showing waiver." *Id.* at 1014.

Even if there remains a factual dispute as to formation, Plaintiff argues Defendant waived its right to compel arbitration by waiting approximately nine months after the arbitrator's June 2025 decision before filing its March 9, 2026 motion. *See Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 30 (2007) ("[A] party must [] demand arbitration within a reasonable time."). However, between June 2025 and March 2026, neither party filed anything on this Court's docket, and there is no indication either party, including Plaintiff, moved this litigation forward. Defendant's counsel also declares he did not receive the motion until August 14, 2025, and then asked to meet and confer with Plaintiff regarding next steps. (Dkt. No. 68-1 ¶¶ 3-4.) So, Plaintiff presents no evidence Defendant sought to "take advantage of litigation in federal court" or otherwise acted inconsistently with its intent to compel arbitration. *See Hill*, 59 F.4th at 474.

In the cases Plaintiff cites, the defendant not only allowed months to pass but also acted inconsistently with an intent to pursue arbitration by seeking discovery and bringing motions in court. *See, e.g.*, *Guess?, Inc. v. Superior Ct.*, 79 Cal. App. 4th 553, 558 (2000) (finding waiver when the defendant for four months "fully participated in the discovery process" without

9

suggesting arbitration); *Augusta v. Keehn & Assocs.*, 193 Cal. App. 4th 331, 339-40 (2011) (finding waiver when the defendant pursued discovery and discovery-related motions before compelling arbitration); *Sobremonte v. Superior Ct. (Bank of Am. Nat'l Tr. & Sav. Ass'n)*, 61 Cal. App. 4th 980, 993-94 (1998), *as modified* (Feb. 26, 1998) (finding waiver when the bank filed several motions, participated in several hearings, and waited until six weeks before trial to compel arbitration); *Davis v. Continental Airlines, Inc.*, 59 Cal. App. 4th 205, 213 (1997) (finding waiver when the defendant engaged in extensive discovery before compelling arbitration). So, Plaintiff's reliance on these cases is unavailing.

Plaintiff therefore fails to show Defendant waived its right to compel arbitration.

## III.    PLAINTIFF'S REQUEST FOR SANCTIONS

Federal Rule of Civil Procedure 11(c) authorizes a party to move for sanctions based on a violation of Rule 11(b). *See* Fed. R. Civ. P. 11(c). Rule 11(c), however, imposes "stringent notice and filing requirements on parties seeking sanctions." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). For example, "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In addition, Rule 11(c) contains a "safe harbor" provision, which requires "that any motion for sanctions be served on the offending party at least 21 days before the motion is filed with the court." *Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 872 (9th Cir. 2014); *see also* Fed. R. Civ. P. 11(c)(2) ("The motion . . . must not be filed . . . if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service."). The Ninth Circuit mandates "strict compliance with Rule 11's safe harbor provision." *See Islamic Shura Council of S. Cal.*, 757 F.3d at 872. Failure to strictly comply with the safe harbor provision bars an award of sanctions under Rule 11(c). *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).

Plaintiff's opposition brief seeks Rule 11 sanctions because Defendant's motion "contains at least eight cases that—while real—do not stand for the propositions for which they are cited, do not contain the quotations Defendant claims they do, or do not contain the page numbers to which Defendant cites." (Dkt. No. 66 at 10.) As an initial matter, the Court notes Plaintiff has also

miscited at least two cases. (Dkt. No. 66 at 19, 20.) *See, e.g.*, *Burton v. Cruise*, 190 Cal. App. 4th 939, 944 (2010); *Sobremonte*, 61 Cal. App. 4th at 993.

Nevertheless, Plaintiff's request for sanctions does not comply with Federal Rule of Civil Procedure 11(c). Rather than make a "separate[]" motion for sanctions, Plaintiff requests sanctions as part of her opposition to Defendant's motion to compel arbitration. *See* Fed. R. Civ. P. 11(c)(2). There is also no evidence Plaintiff complied with Rule 11(c)'s safe harbor requirements.

So, the Court DENIES Plaintiff's request for sanctions.

### CONCLUSION

For the reasons stated above, neither party is entitled to a ruling an arbitration agreement was or was not formed as a matter of law. Instead, Defendant's motion to compel arbitration must be held in abeyance pending trial on the arbitration formation question: specifically, whether Plaintiff signed the Employee Agreement. *See Hansen*, 1 F.4th at 672.

Accordingly, on or before **May 22, 2026**, Plaintiff and Defendant shall meet and confer in person or by video regarding what discovery, if any, is required from each side regarding the making of an arbitration agreement, as well as a discovery and trial schedule. By **June 5, 2026**, the parties shall file a joint statement setting forth their agreements and disagreements, if any, regarding the above.

Because the Court has vacated the May 19, 2026 hearing, the Court DENIES as moot Plaintiff's motion to appear remotely at that hearing. (Dkt. No. 72.)

This Order disposes of Docket Nos. 59, 72.

**IT IS SO ORDERED.**

Dated: May 13, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

11